UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT RAY ELEBARIO, JR.,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social Security,[1]

    Defendant.

_____/

No. C 06-6797 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert Ray Elebario, Jr. ("Elebario") seeks judicial review of Commissioner Michael J. Astrue's ("Commissioner") final decision denying him disability benefits pursuant to Title 42, section 405, subdivision (g) of the United States Code. This case is before the court on cross-motions for summary judgment, and plaintiff's alternative motion for remand. Having read the parties' papers and administrative record, and having carefully considered their arguments and the relevant legal authority, this court GRANTS in part and DENIES in part both parties' motions, and REMANDS this case to the ALJ for further proceedings consistent with this order.

**BACKGROUND**

**I.    Procedural History**

Elebario filed applications for disability insurance benefits and supplemental security income benefits on June 10, 2004, alleging disability beginning on September 18, 2002.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25, subsection (d) of the Federal Rules of Civil Procedure, Astrue has been substituted for former Commissioner Jo Anne B. Barhnart as the defendant in this case. Fed. R. Civ. P. 25(d).

1  (Administrative Transcript 14-16.) ("A.T.")  His application was denied both initially on
2  September 3, 2004, (A.T. 26.), and on reconsideration on October 25, 2004.  (A.T. 34.)
3  Elebario filed a request for hearing on December 13, 2004.  (A.T. 40-42.)  A hearing was
4  subsequently held before Administrative Law Judge Richard P. Laverdure ("ALJ") on
5  September 21, 2005.  (A.T. 14.)  The ALJ rendered an unfavorable decision on March 27,
6  2006, denying Elebario's application.  (A.T. 11, 23.)  Elebario requested review by the
7  Appeals Council on March 28, 2006, (A.T. 6, 10.), and later submitted a brief, dated May
8  15, 2006, as additional evidence for the Appeal Council's consideration.  (A.T. 9, 221-26.)
9  The Appeals Council denied review and the ALJ's decision was affirmed on September 6,
10 2006.  (A.T. 6.)

11      Elebario filed this action on November 1, 2006 seeking judicial review of the ALJ's
12 decision.  Elebario filed a motion for summary judgment and alternative motion for remand
13 on February 7, 2007.  Commissioner filed a cross-motion for summary judgment in
14 opposition on March 7, 2007.  Elebario filed a reply brief on March 15, 2007.

15 **II.    Factual History**

16      Elebario is a thirty-nine year old man.  (A.T. 15.)  He started smoking marijuana at
17 age ten and continued to do so through adulthood up until a couple years before his
18 September 2005 hearing before the ALJ.  (A.T. 236.)  In August 2004, in a psychometric
19 test administered by Dr. April Young ("Dr. Young"), a Social Security consultative
20 psychologist, Elebario achieved a full scale IQ score of 70.  (A.T. 147.)

21      Elebario completed the eleventh grade, but failed out of the twelfth grade.  (A.T. 15,
22 230.)  Though he did receive some Bs and Cs in school, he received many more Ds and Fs
23 despite his best efforts.  (A.T. 135, 231, 234.)  During his tenth grade year, he was enrolled
24 in a couple of courses designated as "RSP," which appears to stand for "remedial special
25 placement."  (A.T. 135; Claimant's Motion at 2.)

26      In or about his eleventh grade year, Elebario was removed from Mira Costa, his
27 "regular school," and transferred to Pacific Shores, a "continuation school."  (A.T. 231-32.)
28

1  Elebario maintained that Pacific Shores was not a "special education" school.  (A.T. 232.)
2  Usually, students were sent to continuation school for disciplinary and attendance
3  problems.  Elebario, however, did not have attendance problems and was never
4  suspended or expelled from his regular school.  (A.T. 232.)

5  There was a higher teacher-to-student ratio at the continuation school, and Elebario
6  believed that he was sent to continuation school to get more personal attention from
7  teachers.  (A.T. 232.)  He eventually passed his eleventh-grade courses at continuation
8  school and was subsequently sent back to regular school for the twelfth grade, where he
9  failed a couple of courses in his final quarter.  (A.T. 232-33.)

10  Elebario's past work experience includes employment as a forklift driver, ice cutter,
11  industrial cleaner, and bottle packer.  (A.T. 15.)  At the hearing, a vocational expert ("VE")
12  testified that the skill levels of these occupations were semiskilled medium work, heavy
13  unskilled work, unskilled medium work, and unskilled light to medium work respectively.
14  (A.T. 15.)

15  In 1994, Elebario was involved in a motor vehicle accident, in which he suffered
16  injuries to his head and skull.  (A.T. 244, 252.)  Elebario was in a coma, had a metal plate
17  placed in his head, and required reconstructive surgery.  (A.T. 17.)  Elebario subsequently
18  experienced lapses in his memory, problems with concentration, migraine headaches, and
19  sensitivity to light.  (A.T. 16, 246, 250.)  Despite his injuries, Elebario continued to work a
20  few years after his accident.  (A.T. 254.)

21  In August 2004, subsequent to filing his application for disability insurance and
22  supplemental security income benefits, Elebario submitted to two consultative
23  examinations.  (A.T. 143-49.)  The first was a psychological examination conducted by Dr.
24  Young.  (A.T. 143-47.)  The second was a neurological examination, conducted by Dr.
25  Daniel Katzenberg ("Dr. Katzenberg").  (A.T. 148-49.)
26  ///
27
28

3

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423 (a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(i). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii). The third step requires the ALJ to compare the claimant's impairment to a Listing of Impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the Listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. § 404.1520(a)(4)(ii).

If the claimant's condition does not meet or equal the Listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient "residual functional capacity" ("RFC") to perform his past work despite the limitations caused by the impairment(s). See 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past work, the Commissioner is required to show, at step five, that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience." See 20 C.F.R. § 404.1520(a)(4)(v).

4

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. Id.

## ALJ'S FINDINGS

In this case, the ALJ determined that Elebario was not disabled at step five of the analysis. (A.T. 22.) In doing so, the ALJ first concluded at step one that Elebario had not engaged in substantial gainful activity since the alleged onset of his disability. (A.T. 15-16.) At step two, the ALJ found that Elebario suffered from several medically determinable impairments, including: status post head trauma with residual headaches subsequent to a motor vehicle accident in 1994; obesity; unspecified cognitive disorder; and a history of cannabis abuse. (A.T. 16.)

At step three, though the ALJ acknowledged that the record demonstrated that Elebario had an IQ score of 70 and additional impairments that would more than minimally restrict his ability to perform basic work-related activities, the ALJ ultimately found that Elebario's condition did not meet or equal Listing 12.05(C). (A.T. 18.) The ALJ reasoned that Elebario failed to meet his burden of proving an onset of mental retardation before age twenty-two. (A.T. 18.) The ALJ was not persuaded by the evidence that Elebario's poor performance in school was necessarily caused by a mental disability or learning disorder, noting that it could have been a result of Elebario's drug use. (A.T. 18.)

Having found that Elebario failed to satisfy step three of the analysis, the ALJ then went on to consider steps four and five. (A.T. 20-21.) At step four, the ALJ found that Elebario had an insufficient residual functional capacity to perform his past relevant work. (A.T. 20.) At step five, the ALJ found that Elebario had a sufficient residual functional capacity to perform other work that exists in significant numbers in the national economy. (A.T. 20.)

The ALJ then ultimately concluded that Elebario was not disabled within the meaning of the Act and therefore denied Elebario's application for disability insurance benefits and supplemental security income payments. (A.T. 22.)

## STANDARD OF REVIEW

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. Thomas v. Barhart, 278 F.3d 947, 954 (9th Cir. 2002). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Additionally, the harmless error rule applies. Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (citing Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (harmless error rule applies where substantial evidence otherwise supports the ALJ's decision)).

When the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by this court on appeal. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993). Thus, this court must consider the evidence before the ALJ and the Appeals Council in reviewing the ALJ's decision. Id.

///

**ISSUES**

Elebario seeks reversal of the Commissioner's denial of disability insurance benefits and supplemental security income payments based on the following arguments:

(1) the ALJ applied an incorrect legal standard in determining whether Elebario's impairment met or equaled the severity of Listing 12.05(C); and

(2) the hypothetical propounded by the ALJ did not include all of Elebario's impairments.

**DISCUSSION**

**I. The ALJ Did Not Apply an Incorrect Legal Standard in Determining Whether Elebario's Impairment Met or Equaled the Severity of Listing 12.05(C).**

Elebario argues that the ALJ applied the incorrect legal standard in determining whether his mental condition met or equaled the severity of mental retardation as defined under Listing 12.05(C).

The Code of Federal Regulations provides that "mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age [twenty-two]." 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 12.05. Under Listing 12.05(C), the required level or severity for this disorder is met when a claimant has both a "valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. (emphasis added).

Because Elebario achieved a full scale IQ score of 70, (A.T. 17.), the ALJ was correct in finding that the first clause of Listing 12.05(C) was satisfied.

Under the second clause, an impairment imposes a "significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (citations omitted). Here, Dr. Young concluded in her psychological assessment report that Elebario's ability to perform detailed or complex tasks was limited and that his "ability to

maintain the appropriate level of concentration, pace, and persistence necessary to perform a one or two-step simple repetitive task [was] mildly impaired." (A.T. 146.) Dr. Katzenberg's examination revealed that Elebario had poor balance, was unable to hop, and could not walk in a straight line. (A.T. 17, 244, 250.) Due to a finding of somewhat unstable gait, Dr. Katzenberg recommended that Elebario not walk on uneven surfaces, climb, or work at heights. (A.T. 149.) Dr. Katzenberg also cautioned Elebario against lifting more than twenty to twenty-five pounds occasionally and fifteen to twenty pounds frequently to "avoid the risk of potential injury when falling or dropping what he is carrying due to the unstable gait." (A.T. 149.) Given this evidence, the ALJ correctly found that the second clause of Listing 12.05(C) was satisfied.

The remaining and more difficult issue, then, is whether there was sufficient evidence to prove an onset of mental retardation before age twenty-two. The ALJ found against Elebario on this issue, concluding that there was insufficient evidence.

A. The ALJ's Decision was Consistent with the Commissioner's Published Comments.

Elebario argues that the ALJ erred in applying an incorrect legal standard in making this determination. To support his argument, Elebario refers to the Commissioner's published comment and response at page 50772 of volume 65 of the Federal Register (the "Comment"). 65 Fed. Reg. 50772. The Comment states that a finding of mental retardation does not require intelligence testing during the developmental period. Id. All that is required under Listing 12.05 is that the mental retardation manifest during the developmental period. Id. The determination of the onset date may be supported by the "common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period." Id.

Elebario contends that the Comment makes clear that Listing 12.05 does not require a claimant to provide evidence of a clinically documented mental retardation that manifested during the developmental period. Rather, it is Elebario's position that a

8

claimant has met his burden if he provides evidence that allows an expert to infer that mental retardation manifested during the developmental period. Elebario maintains that while the evidence of his poor performance in school might be insufficient to meet his burden to *demonstrate* an onset of mental retardation before age twenty-two, it was, at the very least, sufficient to meet his burden to *support* it. (A.T. 277-78.)

However, contrary to Elebario's contention, the ALJ's decision does not appear to be at odds with the Comment. The ALJ's decision does not appear to be based strictly on the fact that there was no evidence that, before Elebario was twenty-two years old, he was not tested for or clinically diagnosed with mental retardation. Instead, the ALJ gave consideration to Dr. Young's psychological assessment report of Elebario, which was the product of an examination conducted well after Elebario's twenty-second birthday.

Dr. Young was charged with the responsibility of assisting in determining Elebario's disability status. As the consultative psychologist who examined Elebario, Dr. Young was in an ideal position to infer a diagnosis of mental retardation, if any such inference could reasonably have been made. However, even in light of Elebario's established record of poor performance in school, Dr. Young did not conclude that Elebario was mentally retarded as defined under Listing 12.05. Giving great weight to Dr. Young's medical conclusions, the ALJ found that the record as a whole did not contain any evidence that demonstrated or supported a finding of mental retardation.

B.      Elebario's Cited Cases Are Not Dispositive on this Issue.

In his motion, Elebario first cites Markle v. Barnhart, a Third Circuit opinion, to support his argument that this case should be remanded to the ALJ for rehearing on the issue of whether there was sufficient evidence to demonstrate or support the onset of mental retardation before age twenty-two. 324 F.3d 182 (3d. Cir. 2003). In Markle, although the claimant achieved a full scale IQ score of 70, the ALJ rejected the IQ score because of evidence that the claimant was able to perform successfully the daily functions of his life. Id. at 184, 186. Because the ALJ in Markle did not find that the claimant had a sufficiently low IQ, the ALJ did not inquire into Listing 12.05(C)'s requirement that the

9

claimant's mental retardation manifest during the developmental period. Id. at 188.  On appeal, the Third Circuit held that the ALJ erred in rejecting the claimant's IQ score because the record in that case did not provide a proper basis for doing so. Id.  The Third Circuit held that it was therefore "incumbent" upon it to remand the case to the ALJ so that the ALJ could further develop the record and address the open issue – whether claimant's mental retardation manifested prior to age twenty-two – in the first instance. Id. at 189.

The present case can be distinguished from Markle in two ways.  First, the claimant in Markle was enrolled in special education courses through the ninth grade and dropped out two months into the tenth grade. Markle, 324 F.3d at 189.  It was from this evidence that the Third Circuit held that there was sufficient evidence that could support a finding of early onset mental retardation. Id.  However, there is no comparable evidence in this case, as Elebario completed the eleventh grade and was never enrolled in special education courses.

Second, unlike in Markle, the ALJ in this case did in fact address the issue of whether there was sufficient evidence to demonstrate or support an onset of mental retardation during the developmental period.  In interpreting the record on this issue, the ALJ considered Dr. Young's psychological assessment report and Elebario's record of poor performance in school.  Accordingly, given the evidence available in the record and the ALJ's adequate examination of the record on this issue, there is no need to further develop the record like there was in Markle.  Therefore, setting aside the fact that this court is not bound by Third Circuit authority, it does not follow from Markle that this case should be remanded.

Elebario then cites Maresh v. Barnhart, an Eighth Circuit opinion, to support his argument that a formal diagnosis of mental retardation is not required under Listing 12.05. 438 F.3d 897, 899 (8th Cir. 2006) ("this court disagrees with the Commissioner that the Listing's introductory paragraph requires a formal diagnosis of mental retardation).  However, this holding seems to be at odds with the plain language of Listing 12.00(A), which makes clear that "the evaluation of disability on the basis of mental disorders

10

requires *documentation* of a medically determinable impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). In any event, <u>Maresh</u> does reaffirm the basic requirement that a claimant must show an onset of mental retardation before age twenty-two. 438 F.3d at 899.

Elebario argues that this case should be remanded under <u>Maresh</u>. However, this case can be distinguished from <u>Maresh</u> in two ways. First, much like the claimant in <u>Markle</u>, the claimant in <u>Maresh</u> "struggled in special education classes through the ninth grade and then dropped out of school." 438 F.3d at 900. The claimant in <u>Maresh</u> also "exhibited deficits in adaptive functioning at a young age, when he had frequent fights with other children." <u>Id.</u> Holding that the ALJ's decision to deny benefits was not supported by substantial evidence, the <u>Maresh</u> court reversed and remanded the case to the ALJ with directions to award benefits. <u>Id.</u> at 901. Here, the evidence is not comparable to the evidence in <u>Maresh</u>. While Elebario struggled in school, he was not enrolled in special education classes, received good grades in his RSP classes, and completed the eleventh grade. Additionally, in her psychological assessment report, Dr. Young reported that "Elebario's ability to relate to others, including co-workers, supervisory personnel, and the general public in an appropriate manner is essentially unimpaired." (A.T. 145.)

Second, much like the ALJ in <u>Markle</u>, the ALJ in <u>Maresh</u>, did not address the issue of whether the claimant's mental retardation initially manifested itself before age twenty-two. <u>Maresh</u>, 438 F.3d at 900. Taking into account evidence of the claimant's significant scholastic difficulties and fights with other children, the Eighth Circuit held that the ALJ should have found that the claimant's impairment manifested during the developmental period. <u>Id.</u> Given the factual dissimilarities between the present case and <u>Maresh</u>, coupled with the fact that the ALJ in this case did in fact adequately address this issue in the first instance, it does not follow from <u>Maresh</u> that this case should be remanded.

C.   The Ninth Circuit has not Adopted a Rebuttable Presumption.

Several circuit courts have applied a rebuttable presumption that a current mental retardation existed before age twenty-two. See, e.g., <u>Hodges v. Barnhart</u>, 276 F.3d 1265,

11

1266, 1268-69 (11th Cir. 2001). The rationale underlying this presumption is that because mental impairments "remain constant throughout life," id. at 1266, a person's IQ is "presumed to remain stable over time in the absence of any evidence of change in a claimant's intellectual functioning." Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001). In circuits that adopt this presumption, "a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presents evidence of low IQ test results after the age of twenty-two." Hodges, 276 F.3d at 1266. If a claimant is entitled to a presumption, the ALJ must then determine whether there is "substantial evidence to rebut this presumption of a fairly constant mental capacity before the age of twenty-two." Id.

However, because the Ninth Circuit has not adopted this standard, this court need not apply it in the present case. So, the mere fact that Elebario recently achieved an IQ score of 70 does not itself create a presumption that Elebario was mentally retarded before age twenty-two.

Even if the Ninth Circuit had adopted such a presumption, there are two pieces of evidence that could, in conjunction, rebut this presumption. The first is Elebario's constant use of marijuana since age ten. As the ALJ observed, Elebario's drug use could have caused his poor performance in school. The second is that Elebario received some good grades in school. This academic success is inconsistent with the allegation of mental retardation or a mental impairment that has remained constant throughout his life.

D.     The ALJ Did Not Need to Call on the Services of an Additional Medical Advisor.

Social Security Regulation 83-20 provides that:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) *should* call on the services of a medical advisor when onset must be inferred. If there is information in the file

12

>   indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20 (1982) (emphasis added). In this context, "should" means "must." DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1990). As further explained by the Ninth Circuit, if the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." Id.

To support his argument that the Appeals Council's refusal to direct further development of the record with a medical advisor was unreasonable and thus reversible error, (Claimant's Motion at 10, n.1.), Elebario cites Armstrong v. Comm'r of the Soc. Sec. Admin.,160 F.3d 587, 591 (9th Cir. 1998) (holding that the ALJ's inference regarding the onset date in favor of the Commissioner without the expertise required by Social Security Regulation 83-20 was reversible error).

However, contrary to Elebario's assertion, the ALJ's finding in this case – that there was insufficient evidence to show that mental retardation manifested in Elebario before age twenty-two – was made with a "legitimate medical basis." See SSR 83-20. The ALJ expressly considered and gave great weight to Dr. Young's psychological assessment report. As discussed previously, Dr. Young was charged with the responsibility of assisting in determining Elebario's disability status. As the psychologist who conducted Elebario's consultative examination, Dr. Young was in an ideal position to infer a diagnosis of mental retardation, if any such inference could reasonably have been made. But even in light of Elebario's established record of poor performance in school, Dr. Young did not conclude that Elebario was mentally retarded as defined under Listing 12.05(C).

Additionally, the ALJ did not, and Elebario does not argue to the contrary, fail to take into account other evidence that might be relevant to the disposition of this issue. Thus, there is no need to further develop the record on this issue, nor is there a need to remand the case to the ALJ so that a medical expert may provide a medical basis to

13

substantiate any inference that might be made because Dr. Young has already provided the medical basis.

For the foregoing reasons, this court finds that the ALJ did not apply an incorrect legal standard in determining whether Elebario's condition met or equaled the severity of Listing 12.05(C).

E.   Harmless Error

Even if the legal standard that the ALJ applied was erroneous, this court finds that such error was harmless. In view of the entire record, there was insufficient evidence to support an inference that Elebario was mentally retarded during the developmental period. While Elebario did perform poorly in school, he was not enrolled in a special education program, and did receive passing grades in a number of classes. As the ALJ pointed out, the exact cause of Elebario's poor performance is indeterminable because of his past drug use. Therefore, there was insufficient evidence to support a finding that Elebario's impairments met or equaled the severity in Listing 12.05(C).

**II.   The Hypothetical Propounded by the ALJ Was Legally Inadequate Because it Did Not Include All of Elebario's Impairments.**

As noted, having found that Elebario's impairments failed to satisfy the listings at step three of his analysis, the ALJ then went on to steps four and five to consider whether Elebario had a sufficient residual functional capacity ("RFC") to perform his past work or some other work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1545(a)(1). Taking into consideration Drs. Young and Katzenberg's medical conclusions, the ALJ found that Elebario's impairments limited him to the "performance of a reduced range of light work activity." (A.T. 19-20.)

At step four, the ALJ found that Elebario did not have a sufficient RFC to perform his past relevant work. (A.T. 20.) Turning to step five, the ALJ then considered whether Elebario had a sufficient RFC to adjust to and perform some other work.

To assist the ALJ in making this determination, a vocational expert ("VE") may offer expert testimony in response to a hypothetical question propounded by the ALJ about

14

whether a person with the physical and mental limitations imposed by the claimant's impairments can meet the demands of some other work.  See 20 C.F.R. § 404.1560(b)(2) & (c).  Because a VE's testimony is "particularly important in establishing precisely which available jobs [a] claimant [can] perform," Johnson v. Shalala, 60 F.3d 1428, 1436 (9th Cir. 1995) (citing Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982) (essential role of a VE is to "[translate] factual scenarios into realistic job market probabilities")), the ALJ's depiction of the claimant's impairments in the hypothetical must be "accurate, detailed, and supported by the medical record."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

At hearing, the ALJ posed the following hypothetical to the VE:

> [A]ssume someone of [Elebario's] age, education and work experience.  Further assume a capacity for light work but no work at heights.  Avoid hazards that would pose a risk of serious injury or death.  Avoid uneven surfaces and we will restrict this to simple, unskilled work.

(A.T. 262.)  Observing that Elebario's impairments were "primarily physical in nature," the ALJ clarified that the hazards to be avoided in his hypothetical were those that posed a risk of serious injury or death as a result of a physical impairment.  (A.T. 263.)

Based on this hypothetical, the VE testified that Elebario had a sufficient RFC to perform the unskilled jobs of small parts assembler, mail clerk, and small products assembler.  (A.T. 266-67.)  Given Elebario's age, educational background, work experience, and RFC, the ALJ agreed with the VE's conclusion that Elebario was in fact "capable of adapting and making a successful adjustment to work that exists in significant numbers in the national economy."  (A.T. 22.)  The ALJ therefore held that Elebario was not disabled within the meaning of the Social Security Act.

Elebario argues that the VE's opinion has no evidentiary value because it was based upon a hypothetical that did not accurately reflect the extent of Elebario's limitations. Specifically, the hypothetical did not include Elebario's medically diagnosed deficiencies of concentration, persistence, and pace.

The Commissioner counters that the ALJ's hypothetical was adequate, as it was based upon all of Elebario's limitations that were supported by substantial evidence.  Citing

15

Social Security Ruling 96-8p, the Commissioner argues that the deficiencies of concentration, pace, and persistence are not relevant at steps four or five of the analysis. Social Security Rule 96-8p provides in relevant part that:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [,which includes limitations of concentration, pace, and persistence,] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p.

However, contrary to the Commissioner's contentions, this does not mean that the limitations of persistence, pace, and concentration need not be included in an ALJ's hypothetical. See Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (remanding the case to the ALJ due, in part, to the ALJ's failure to include the claimant's deficiencies of concentration, pace, and persistence, holding that any hypothetical on remand should include such limitations so that a VE may accurately determine claimant's ability to work).[2]

Indeed, to properly present a hypothetical to a VE, an ALJ must include all of the claimant's limitations. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). Even so, an ALJ may only include those limitations that are supported by substantial evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted). If the assumptions in the hypothetical are not supported by substantial evidence, a VE's opinion has no evidentiary value. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984). So, while an ALJ is free to reject alleged limitations that are not supported by substantial evidence, an ALJ is not free to disregard limitations properly supported by the evidence. Robbins, 466 F.3d at 886; Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

---

[2] Though Newton is an Eighth Circuit case, it was cited by the Ninth Circuit in Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) without criticism or disapproval. The Ninth Circuit did not, however, expressly adopt the Newton rule, as it distinguished the facts in the case before them with the facts in Newton.

16

United States District Court

For the Northern District of California

In finding that Elebario was not credible and was "prone to making inaccurate and inconsistent statements as well as exaggerating his level of symptomatology," (A.T. 20.), the ALJ concluded that there was "insufficient support in the medical record" to support Elebario's allegations of deficits in "cognitive function, including alleged significant restrictions in attention span, concentration, and the ability to focus on [a] task." (A.T. 19.) This conclusion, however, appears to be unreasonable, as it is undermined by the medical evidence in the record. In her psychological assessment report, Dr. Young concluded that Elebario's ability to "maintain [an] appropriate level of concentration, pace, and persistence necessary to perform a one or two-step simple repetitive task is mildly impaired." (A.T. 146.) Thus, regardless of whether Elebario was credible or not, the limitations at issue were indeed supported by substantial medical evidence in the record. Even supposing the falsity of Elebario's *allegations*, this circumstance did not contradict or weaken Dr. Young's *medical diagnosis* of Elebario's condition. In fact, the ALJ declared that the "medical and functional conclusions of [Dr.] Young were not rebutted by any other evidence of record." (A.T. 20.)

Because Elebario's mild impairment – limitation of concentration, persistence, and pace – was supported by substantial evidence, the ALJ's failure to take it into account calls into question the validity of the hypothetical. Cf. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (holding that because the VE was present during and received a copy of the medical expert's testimony of the claimant's limitation of concentration, persistence, and pace, the ALJ's hypothetical did adequately incorporate the claimant's limitation); see Newton, 92 F.3d at 695 (remanding the case to the ALJ due, in part, to the ALJ's failure to include the claimant's deficiencies of concentration, pace, and persistence, holding that any hypothetical on remand should include such limitations so that a VE may accurately determine claimant's ability to work). The ALJ should have included this mild impairment in his hypothetical and his failure to do so rendered his hypothetical legally inadequate. Therefore, the VE's testimony as to Elebario's RFC to perform some other work has no evidentiary value and cannot support the ALJ's decision.

A.     This Case is Remanded to the ALJ for Further Proceedings.

The final issue to resolve, then, is whether this case should be remanded for further proceedings or simply for an award of benefits. The "decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." Reddick v. Chater, 157 F.3d 715, 728 (9th Cir. 1998) (citations omitted). A remand for further proceedings is unnecessary where the record is fully developed and there are "no outstanding issues that must be resolved before a proper disability determination can be made." Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988); see also, Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989) (directing an award of benefits where no useful purpose would be served by further proceedings).

Here, remand for further proceedings is necessary to allow the ALJ to pose a proper hypothetical to the VE that includes Elebario's mild impairment in concentration, persistence, and pace. See Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (where hypothetical posed by the ALJ to the VE does not include all of the claimant's limitations, the expert opinion has no evidentiary value and remand is necessary). Though Elebario's counsel did proffer two *modified* hypotheticals that appeared to include all of Elebario's impairments for the VE's consideration, it remains somewhat unclear to this court: (i) exactly what the additional assumptions were; (ii) exactly what the VE's testimony was in response to each of the two modified hypotheticals; and (iii) whether the ALJ gave credit to the VE's testimony regarding the two modified hypotheticals.

At the very least, it is clear that the inadequacy of the ALJ's *original* hypothetical is not harmless because, as the record demonstrates, if Elebario's mild impairment in concentration, persistence, and pace had been included in the hypothetical, the VE's testimony would have been different. See (A.T. 269.) Thus, remand for further proceedings is necessary in this case to fully develop the record on this issue and allow the ALJ to pose a proper hypothetical to the VE.

///

18

**CONCLUSION**

For the foregoing reasons, Elebario's motion for summary judgment is GRANTED in part and DENIED in part.  Commissioner's cross-motion for summary judgment is also GRANTED in part and DENIED in part.

With regard to the first issue, the court finds that the ALJ did not apply an incorrect legal standard in determining whether Elebario's condition met or equaled the severity of Listing 12.05(C).  Additionally, even if the legal standard that the ALJ applied was erroneous, the court finds that this error was harmless, as there was insufficient evidence in the record to support a finding that Elebario's impairments met or equaled the severity in Listing 12.05(C).  Therefore, remand is not necessary on this issue.

With regard to the second issue, the court finds that remand for further proceedings consistent with this order, is appropriate pursuant to 42 U.S.C. § 405(g) because the ALJ failed to set forth a legally adequate hypothetical that included all of Elebario's impairments that were supported by substantial evidence.  42 U.S.C. § 405(g).  On remand, the ALJ should provide a complete hypothetical to the VE that takes into account all of Elebario's impairments, including his mild impairment in concentration, persistence, and pace.

This order fully adjudicates the motions listed at Nos. 6 and 7 of the clerk's docket for this case.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 12, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge